[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This dissolution of marriage action was filed in the Judicial District of New London, in the superior court at Norwich on November 13, 2000. As it pertains to the issues at trial, the complaint seeks dissolution of the marriage and a fair distribution of property and debts.
The defendant admitted all of the allegations in the plaintiff's complaint and filed a cross-complaint on May 10, 2001 seeking: dissolution of the marriage, support for the three minor children, alimony, attorney fees, a fair and equitable distribution of property and such other relief as law and equity would provide.
A trial was held on all outstanding financial issues on diverse days in April and May of 2002, with the final trial briefs due on June 14, 2002. Based on the testimony and exhibits at trial, the court finds the following facts.
The parties were intermarried on September 21, 1985 in Woodstock, Connecticut. Three children are issue of the marriage; Robert L. Stratton, born March 20, 1988; Benjamin D. Stratton, Jr., born December 29, 1989; and Kyle R. Stratton, born May 28, 1991. At the time of their marriage, the plaintiff husband was forty-three years old and the defendant wife was nineteen years old. The couple owned and operated two "clubs/massage parlors"; the Hidden Valley, opened in 1985, and the Seventy-Five Club opened in 1987. A substantial portion of the profits from said clubs was derived from illegal activities at the clubs. Such profits were taken in cash by both parties and were never reported to the IRS. Both parties were convicted of felonies in 1993 as a result of activities at the clubs. The plaintiff received a three-year jail sentence and the defendant received probation.
The parties made two significant purchases related to the funds taken from the clubs. They used approximately $100,000 as a down payment for the marital home; and the plaintiff entered into a partnership (namely, J CT Page 12704 and S Properties), with a Mr. Jambor for the purpose of purchasing several rental properties in Norwich, Connecticut.
The marital home on 1202 Voluntown Road in Griswald, Connecticut was purchased in the late 80's, put solely in the defendant's name in 1993, and was sold by the defendant in 1997. At this point in time, she could no longer afford to keep the home. She received approximately $60,000 as the net proceeds from said sale. These proceeds were used solely by the defendant for her attorney fees in the criminal matter, a car, an apartment for the family, and some furniture.
J and S bought six rental properties in Norwich, Connecticut which represent all of the assets of the partnership. Said properties were purchased in 1985 with the plaintiff investing $200,000 of the marriage's tainted funds while Mr. Jambor invested no money. The agreement was that by Mr. Jambor being solely responsible for managing the properties, he would eventually earn equity in said properties equal to that of the plaintiff. Mr. Stratton testified that Mr. Jambor also put $30,000 of his own funds into the partnership properties and that presently, he and Mr. Jambor are equal partners. In regards to these six rental properties, the court finds the following:
(1) 28th 7th Street; two-family dwelling; current equity approximately $38,000
(2) 24 8th Street, two-family dwelling; approximately $42,000.
(3) 113 Otrobondo Avenue, one-family; approximately $42,000.
(4) 466 Boswell; two separate units, one lot; current equity approximately $30,000.
As to the above listed properties (numbers one through four) the court finds that the plaintiff's equity in said properties is approximately $76,000. The court further finds that there is a judgment lien on said properties in the amount of approximately $100,000 against the plaintiff's interest in these four properties.
(5) 47-49 14th Street; six-unit apartment; current equity approximately $25,000
(6) Route 32; two single units; current equity approximately $50,000 CT Page 12705
As to the properties listed in numbers five and six above, the court finds that the plaintiff's equity in said properties is approximately $37,500.
The plaintiff is now sixty years old, minimally educated, a convicted felon, and in poor health. He has had five heart attacks since 1985, by-pass surgery, and his heart functions at 25 percent of its capacity. The plaintiff has been unemployed since 1992 and his employment prospects are extremely limited. He has been receiving Social Security Disability since 1995. His current benefit is approximately $130 per week after a deduction for child support in the amount of $45. The plaintiff also receives a benefit from the State of Connecticut of approximately $45 per week and a food stamp benefit of approximately $30 per week. He currently lives rent-free at one of the properties he co-owns, namely 47-49 14th Street. He contributes to the partnership by performing various "light" tasks on the properties from painting to running errands. Based on these financial facts, the court finds that the plaintiff understated his earnings on his financial affidavit, as he did not include any income for living rent-free; see Connecticut General Statutes § 46b-215a-1 (11) (A) (v). The court finds the plaintiff earns $250 net per week and has used such amount in its child support calculations. The plaintiff owns a 1988 Chevrolet truck. Aside from the judgment lien previously referred to, the plaintiff has approximately $3,000 in personal debt.
The defendant is thirty-six years old and lives in a rental unit on 392 Norwich Avenue in Taftville, Connecticut. Although she did not report any specific health problems, the defendant appeared extremely frail. She has a GED and currently works as a domestic at the Residence Inn. She earns approximately $225 as a net weekly income from such employment. The defendant derives additional income from the following sources: child support, $46.50 per week; Social Security Disability (spouse's allowance), $25 per week; Social Security Disability (children's allowance), $72.50 per week. The court notes that at the time of trial, the defendant's live-in companion contributed approximately $230 per week to the household. Based on these financial facts, the court finds that the defendant overstated her net earnings on her financial affidavit as her companion contribution should not be included for child support payments; see Connecticut General Statutes § 46b-215a-1 (11) (B) (iv). The court finds that the defendant earns $330 net per week and has used such amount in its child support calculations. The defendant owns a 1994 Chevrolet Blazer. She has approximately $27,000 in personal debt, some of which she claims was accumulated prior to the plaintiff's incarceration. CT Page 12706
The arrest of the parties in 1992 marked the time when the marriage began to breakdown and the court finds that as early as 1994 the relationship had irretrievably broken down. The causes of such breakdown appeared numerous, but the most substantial causes were; the parties' arrest and conviction; financial difficulties; and the plaintiff's abusive behavior toward the defendant. Although both parties contributed to the breakdown, the plaintiff bears the greater responsibility for the irretrievable breakdown.
The court finds that it has jurisdiction; that the complaint was properly served; that the matter has been pending for more than ninety days; one of the parties resided in the state of Connecticut for more than one year prior to the filing of this action. The other allegations in the complaint are proved, including the fact that the marriage has irretrievably broken down. The court will dissolve the marriage based on such breakdown.
The court, in entering its other orders, has considered the provisions of Connecticut General Statutes including § 46b-40, 46b-56, 46b-62,46b-81, 46b-82 and all other relevant statutes and evidence.
 ORDERS
1. Child Support
The plaintiff shall pay to the defendant child support in the amount of $92 per week beginning on October 12, 2002. Said sum shall be secured by an immediate wage withholding order. According to the Connecticut Child Support Guidelines, the plaintiff's presumptive support amount is figured to be $105 per week. However, the court finds the plaintiff to be a low-income obligor and the actual amount he must pay is limited by said guidelines to $92; see Connecticut General Statutes §§ 46b-215a-2a (2) (A) (ii) and 46b-215a-2a (2) (B) (i).
2. Periodic Alimony
The plaintiff shall pay to the defendant alimony in the amount of $1 (one dollar) per year, which shall terminate upon the first occurrence of any one of the following events:
a) the death of either party
b) remarriage by the defendant.
3. Lump Sum Alimony
CT Page 12707
The plaintiff shall pay to the defendant, on or before December 1, 2002, a lump sum alimony payment of $25,000. If such lump sum payment is not made by the such date, the plaintiff is ordered to sell his interest in his partnership properties owned by J and S Partnership to his partner or a third party or to commence proceedings to dissolve said partnership. The intent of such order is that such dissolution or sale of said partnership properties will enable the plaintiff to have sufficient funds to make said alimony payment and to meet such other financial obligations imposed on him by these orders. Said lump sum payment represents spousal support with the intention that it shall not be able to be discharged in any bankruptcy proceeding.
4. Life Insurance Policy
The Conseco life insurance policy shall be maintained at its current face value ($250,000) for the equal benefit of the three minor children. Said policy's premium shall be paid equally by the parties and shall remain in force at least until the youngest child reaches the age of eighteen years.
5. Debts
Each party shall pay the debts as listed on their respective financial affidavits, except that any attorneys fees listed on said financial affidavits, shall be paid as ordered.
6. Automobiles
Each party shall retain ownership of their respective vehicles as listed on their latest financial affidavit.
7. Attorney Fees
Each party shall be responsible to pay his or her own attorney's fees. The State of Connecticut shall pay the fees of Tammie L. Gildea, Esq., guardian ad litem for the minor children.
8. Health Insurance
Each party shall maintain his/her own health insurance as is available to them. The defendant shall maintain health insurance for the three minor children as it is available to her. The plaintiff shall pay 43% and the defendant shall pay 57% of any un-reimbursed medical expenses after the defendant pays the first $100 of such un-reimbursed medical expenses CT Page 12708 in any calendar year. Said percentages conform to Connecticut's Guidelines.
SO ORDERED this 3rd day of October, 2002.
_____________________, J. PHILIP A. SCARPELLINO CT Page 12709